[L. A. No. 16750. In Bank.—April 26, 1940.]

WILLA BALLARD et al., Administrators, etc., Appellants, v. EMILIE G. MacCALLUM et al., Respondents.

William L. Kuehn and Franz R. Sachse for Appellants.

Phillip N. McCaughan, Edmund Nelson and Hugo Steinmeyer for Respondents.

GIBSON, J.—This is an action by the administrators of the estate of William A. Ballard to cancel a trust created by decedent as trustor, and to obtain a reconveyance of the *corpus* of the estate. The trial court gave judgment for defendant and plaintiffs appealed. The appeal involves the interpretation of two instruments, one denominated a "contract of annuity for life" and the other a "declaration of trust".

On January 14, 1935, decedent, then eighty-five years of age, executed the annuity contract under which he agreed to convey certain property to the California First National Bank of Long Beach as trustee, for the benefit of defendant Emilie G. MacCallum. In consideration therefor she agreed to pay him the sum of $110 per month during his natural life and also to pay all taxes, assessments and insurance premiums, and to keep the property in repair. It is stated that time is of the essence of the contract and that if the payment or charges be not paid as provided therein the interest of Miss MacCallum shall be forfeited and the property shall revert to Ballard. The trustee is authorized by Ballard to convey the property to Miss MacCallum upon his death, if the agreement is fully kept.

It is further provided that in the event of default in payments by the beneficiary, which default shall continue for ten (10) days after notice in writing given by the trustor or trustee, or in the event of default in discharging liens or encumbrances which shall continue for thirty (30) days after such notice in writing, or in the event of failure to pay any of the taxes or assessments in the time provided by law, the trustor, "at his option, after thirty (30) days' notice" may declare the agreement cancelled, and the trustee shall then reconvey the real property to the trustor. The contract declares that all of the obligations of the beneficiary are

"conditions precedent to be faithfully kept and performed . . . strictly in accordance with the terms of this agreement" to entitle her to continue in possession of the property.

A declaration of trust was contemporaneously executed by the California First National Bank of Long Beach as trustee, and decedent as trustor, for the benefit of Miss MacCallum, to carry out the terms of the annuity contract, which was incorporated by reference. The declaration provides that "in the event of the failure of the Beneficiary hereunder to make the payments as and when provided for under the agreement", or any other default by the beneficiary, "providing further that said default has not been cured in accordance with the terms of said agreement", then the trustee shall reconvey the property to the trustor, "and said trust, upon such reconveyance, shall absolutely cease and determine . . . ". It is further provided that in the event of the death of the trustor, "this trust shall *ipso facto* cease and determine at the time of such demise, and the entire trust property shall be by said Trustee conveyed and delivered so far as it may then be able, to Emilie G. MacCallum, a single woman, provided the payments and obligations of said agreement . . . be fully performed until the death of said Trustor".

Defendant Bank of America succeeded the First National Bank of Long Beach as trustee. On December 22, 1936, Ballard died intestate and plaintiffs duly qualified as administrators of the estate. Thereafter plaintiffs brought this action to compel the reconveyance of the property to the estate.

Four causes of action were set forth in the complaint. The first was based upon the alleged failure of Miss MacCallum to make payments and to perform other obligations of the contract. The second alleged incompetency of Ballard and undue influence of Miss MacCallum at the time of the execution of the contract and declaration of trust. The third cause of action alleged that the consideration for the contract and declaration of trust was wholly inadequate. The fourth alleged that the consideration had failed by reason of nonperformance of defendant MacCallum. The complaint contained no allegation that notice of the alleged default or nonperformance by Miss MacCallum was ever given to her.

At the trial defendant objected to the introduction of evidence on the ground that the annuity contract and declara-

tion of trust provide for termination only after notice of default given to the beneficiary, and that the complaint failed to state a cause of action because no such notice was alleged. The court sustained this objection as to the first and fourth causes of action. After trial on the second and third causes, the court found against plaintiffs on the issues raised and rendered judgment for defendants.

As already stated, the determination of this appeal depends upon the proper construction of these two instruments. No question is raised as to the sufficiency of the evidence to justify the findings in favor of defendants on the other issues.

An inspection of the provisions of the two instruments discloses the controversy between plaintiffs and defendant Mac-Callum as to their effect. Certain language suggests that if the beneficiary fails in her obligation to make the monthly payments or to meet other charges against the property, the rights shall *automatically* cease, that is, they shall be forfeited and the land shall revest in the trustor and his successors without any action on their part. This inference may be drawn, for example, from the provision that all of the rights "shall cease and determine and be forfeited . . . and the property shall revert", and the provision that each and all of the terms of the agreement are "conditions precedent" and must be strictly performed by the beneficiary to entitle her "to continue in possession". Other language justifies the opposite inference, namely, that there is no automatic forfeiture or divestment of rights of the beneficiary upon default, but that written notice of default, followed by failure to cure the same for a specified period, is a prerequisite to the power to forfeit rights of the beneficiary and to retake the property. This is the normal effect of the provisions of the agreement that in case of default for ten days or thirty days after notice in writing, the trustor at his option may cancel the agreement. This view is reinforced by the statement in the trust instrument providing for termination of the trust upon default, "and, providing further, that said default has not been cured in accordance with the terms of said agreement".

Faced with these contradictory provisions the trial court adopted the latter view, holding that the mere default by the beneficiary did not immediately terminate all her rights, but gave the trustor an election to serve notice of default and

thereby terminate after the failure to cure the same within the required period. This interpretation of the trial court, if reasonable, must be upheld.

Plaintiffs attack the judgment on several grounds. They first call attention to the familiar rule that inconsistencies in an instrument should if possible be reconciled so as to give effect to every part of the agreement. They contend that the court has given effect only to the provisions requiring notice prior to cancellation, and has ignored the provisions for automatic forfeiture upon default. Their suggested reconciliation is to treat the trust as terminable by the trustor during his lifetime only after notice of default, but to hold it subject to forfeiture without notice if at the death of the trustor the beneficiary has not fully performed. In support of their theory they lean heavily upon the provision that performance by the beneficiary is a ''condition precedent''. They also argue that the trial court's construction of the instruments is inequitable, in that it permits the beneficiary to reap the benefits of the contract even though it is alleged that she did not perform on her part.

■ We may first notice the argument based on the so-called equities of the case, and here it is important to grasp the distinction between what the contract contemplates and what may happen by reason of unforeseen circumstances. There is nothing inequitable in a bargain merely because it turns out better for one party than the other. The fact that the trustor died shortly after the agreement was made, so that the actual obligations of the beneficiary were slight, was simply one of the contemplated possibilities. He might have lived a considerable time and her obligations might have been quite large. These uncertainties are inherent in any agreement of this character. The original agreement gave the trustor the assurance of support for the rest of his life in exchange for a transfer of his property, and its fairness is not open to question.

Nor is it necessarily inequitable that defendant claims rights in the property despite failure to make her required payments. She was still obligated to pay at decedent's death and the remedy of forfeiture after notice was concededly available if she refused. If she has not yet paid she can still be held liable. In short, the contract itself provides an ample remedy for any default on the part of defendant and the

agreement as thus interpreted is not therefore rendered inequitable by any alleged failure of defendant to perform.

■ Next we have the assertion that the court fails to give effect to the whole of the contract. The answer is, of course, that where the agreement contains inconsistent provisions, it is impossible to give each its full effect, and plaintiffs' argument is nothing more than a plea that we choose those favorable to them. The suggestion that the provisions differ depending on whether the trustor is living or dead is without any support in the text of the agreement, and the distinction has no relevant connection with the objects of the parties.

In the face of these plain contradictions in the instruments, a fundamental rule of construction becomes applicable. The interpretation sought by plaintiffs is one which would lead to the forfeiture of property rights by reason of the mere failure to make payments strictly on time. In this state, by a long line of decisions, we have recognized such forfeitures in instalment contracts for the purchase of land and in conditional sales of goods. But aside from these special situations, our courts follow the accepted doctrine that equity will relieve even against an express provision for forfeiture. (See Civ. Code, secs. 3275, 3369; *Ebbert* v. *Mercantile Trust Co.*, 213 Cal. 496 [2 Pac. (2d) 776]; *Hopkins* v. *Woodward*, 216 Cal. 619 [15 Pac. (2d) 499]; *Henck* v. *Lake Hemet Water Co.*, 9 Cal. (2d) 136 [69 Pac. (2d) 849]; 20 Cal. Law Rev. 194; 21 Cal. Law Rev. 516; 18 Cal. Law Rev. 681; 52 Harv. Law Rev. 129.)

In the instant case we are not required to apply this doctrine and grant relief from express and unmistakable language compelling a forfeiture. The problem here is much simpler. We have two possible constructions, one of which leads to a forfeiture and the other avoids it. In such a case the policy and rule are settled, both in the interpretation of ordinary contracts and instruments transferring property, that the construction which avoids forfeiture must be made if it is at all possible. (See *Hawley* v. *Kafitz*, 148 Cal. 393 [83 Pac. 248, 113 Am. St. Rep. 282, 3 L. R. A. (N. S.) 741]; *Henck* v. *Lake Hemet Water Co.*, *supra*; Restatement, Property, sec. 45, comment i.)

The interpretation urged by plaintiffs could give rise to great injustice in the operation of this contract. Under their theory the beneficiary could keep on paying monthly sums to

the trustor and all the expenses of maintaining the property for a period of years, and yet the slightest subsequent failure in the prompt performance of any one of her obligations would automatically terminate all of her rights and deprive her of the only return provided for her performance. In the Ebbert case, *supra,* this court found that the terms of the contract were to this effect, and that the provision for forfeiture expressly applied "irrespective of the kind or extent of default in performance or the amount of beneficial performance already received". There it became necessary to overturn the very language of the agreement in order to avoid such a grossly inequitable result. Here it is only necessary to reconcile the conflicting provisions of the instruments in favor of those which avoid the inequitable forfeiture urged by plaintiffs.

The judgment is affirmed.

Curtis, J., Shenk, J., Carter, J., Houser, J., Edmonds, J., and Waste, C. J., concurred.