# UNUM LIFE INSURANCE CO. OF AMERICA *v.* WARD

No. 97–1868.  Argued February 24, 1999—Decided April 20, 1999

360

GINSBURG, J., delivered the opinion for a unanimous Court.

*William J. Kayatta, Jr.*, argued the cause for petitioner. With him on the briefs were *David L. Bacon, Charles M. Dyke, Barbara H. Furey, Brian G. Kanner, Tamarra T. Rennick, Lesley C. Green*, and *Russell G. Petti*.

*Deputy Solicitor General Kneedler* argued the cause for the United States as *amicus curiae* urging reversal. With

him on the briefs were *Solicitor General Waxman, James A. Feldman, Judith E. Kramer, Allen H. Feldman, Nathaniel I. Spiller,* and *Elizabeth Hopkins.*

*Jeffrey Isaac Ehrlich* argued the cause for respondent. With him on the briefs were *Brian Stuart Koukoutchos, Janice Mazur, Brooks Iler,* and *Arthur M. Palkowitz.**

*Briefs of *amici curiae* urging reversal were filed for the American Council of Life Insurance et al. by *Robert N. Eccles, Karen M. Wahle, Jeffrey L. Gabardi,* and *Phillip E. Stano;* for the Association of California Life and Health Insurance Companies by *James H. Fleming;* for the Association of Private Pension and Welfare Plans et al. by *Michael E. Malamut, Loretta M. Smith, Jan Amundson, Quentin Riegel,* and *Stephen A. Bokat;* and for the Business Roundtable by *Charles Rothfeld* and *Lawrence S. Robbins.*

Briefs of *amici curiae* urging affirmance were filed for the State of Texas et al. by *John Cornyn,* Attorney General of Texas, and *David C. Mattax, Eliot Spitzer,* Attorney General of New York, *Peter Schiff,* Acting Solicitor General, *Patricia Smith,* Assistant Attorney General, and *Dan Schweitzer,* and by the Attorneys General for their respective jurisdictions as follows: *Bill Pryor* of Alabama, *Janet Napolitano* of Arizona, *Winston Bryant* of Arkansas, *Bill Lockyer* of California, *Gale A. Norton* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *Margery S. Bronster* of Hawaii, *Alan G. Lance* of Idaho, *James E. Ryan* of Illinois, *Jeffrey A. Modisett* of Indiana, *Thomas J. Miller* of Iowa, *Richard P. Ieyoub* of Louisiana, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Scott Harshbarger* of Massachusetts, *Jennifer M. Granholm* of Michigan, *Mike Hatch* of Minnesota, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Peter Verniero* of New Jersey, *Patricia A. Madrid* of New Mexico, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *W. A. Drew Edmondson* of Oklahoma, *Hardy Myers* of Oregon, *Mike Fisher* of Pennsylvania, *Jose Fuentes-Agostini* of Puerto Rico, *Sheldon Whitehouse* of Rhode Island, *Charles M. Condon* of South Carolina, *Paul G. Summers* of Tennessee, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, *Christine O. Gregoire* of Washington, *Darrell V. McGraw* of West Virginia, and *Gay Woodhouse* of Wyoming; for the Council of State Governments et al. by *Richard Ruda* and *Steven H. Goldblatt;* for the National Association of Insurance Commissioners by *Sally B. Sur-*

JUSTICE GINSBURG delivered the opinion of the Court.

This case, brought under § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 891, as amended, 29 U. S. C. § 1132(a), concerns ERISA's preemption and saving clauses. The preemption clause, § 514(a), 29 U. S. C. § 1144(a), broadly states that ERISA provisions "shall supersede . . . State laws" to the extent that those laws "relate to any employee benefit plan." The saving clause, § 514(b)(2)(A), 29 U. S. C. § 1144(b)(2)(A), phrased with similar breadth, exempts from preemption "any law of any State which regulates insurance." The key words "regulates insurance" in § 514(b)(2)(A), and "relate to" in § 514(a), once again require interpretation, for their meaning is not "plain"; sensible construction of ERISA, our decisions indicate, requires that we measure these words in context. See *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 47 (1987) (noting that repeated calls for interpretation are not surprising in view of "the wide variety of state statutory and decisional law arguably affected" by ERISA's preemption and saving clauses).

The context here is a suit to recover disability benefits under an ERISA-governed insurance policy issued by defendant-petitioner UNUM Life Insurance Company of America (UNUM). Plaintiff-respondent John E. Ward submitted his proof of claim to UNUM outside the time limit set in the policy, and UNUM therefore denied Ward's claim.

Ruling in Ward's favor, and reversing the District Court's summary judgment for UNUM, the Court of Appeals for the Ninth Circuit relied on decisional law in California, the State in which Ward worked and in which his employer operated. The Ninth Circuit's judgment rested on two grounds. That

*ridge;* and for the National Employment Lawyers Association by *Daniel M. Feinberg* and *Paula A. Brantner.*

*Mary Ellen Signorille* and *Melvin Radowitz* filed a brief for the American Association of Retired Persons as *amicus curiae.*

court relied first on California's "notice-prejudice" rule, under which an insurer cannot avoid liability although the proof of claim is untimely, unless the insurer shows it was prejudiced by the delay. The notice-prejudice rule is saved from preemption, the Court of Appeals held, because it is "law . . . which regulates insurance." See *Ward* v. *Management Analysis Co. Employee Disability Benefit Plan,* 135 F. 3d 1276, 1280 (1998).

The Court of Appeals announced a further ground for reversing the District Court's judgment for UNUM, one that would come into play if the insurer proved prejudice due to the delayed notice. Under California's decisions, the Ninth Circuit said, the employer could be deemed an agent of the insurer in administering group insurance policies. Ward's employer knew of his disability within the time the policy allowed for proof of claim. The Ninth Circuit held that the generally applicable agency law reflected in the California cases does not "relate to" employee benefit plans, and therefore is not preempted. See *id.,* at 1281–1283, 1287–1288.

We granted certiorari, 525 U. S. 928 (1998), and now affirm the Court of Appeals' first disposition, and reverse the second. California's notice-prejudice rule, we agree, is a "law . . . which regulates insurance," and is therefore saved from preemption by ERISA. California's agency law, we further hold, does "relate to" employee benefit plans, and therefore does not occupy ground outside ERISA's preemption clause.

I

UNUM issued a long-term group disability policy to Management Analysis Company (MAC) as an insured welfare benefit plan governed by ERISA, effective November 1, 1983. The policy provides that proofs of claim must be furnished to UNUM, at the latest, one year and 180 days after the onset of disability.

Ward was employed by MAC from 1983 until May 1992. Throughout this period, premiums for the disability policy

were deducted from Ward's paycheck. Under the admitted facts of the case, Ward became permanently disabled with severe leg pain on the date of his resignation, May 5, 1992. See 135 F. 3d, at 1280.

Ward's condition was diagnosed as diabetic neuropathy in December 1992. In late February or early March 1993, he qualified for state disability benefits and thereupon informed MAC of his disability and inquired about continuing health insurance benefits. In July 1993, Ward received a determination of eligibility for Social Security disability benefits and forwarded a copy of this determination to MAC's human resources division. See id., at 1279. In April 1994, Ward discovered among his papers a booklet describing the long-term disability plan and asked MAC whether the plan covered his condition. When MAC told him he was covered, Ward completed an application for benefits and forwarded it to MAC. In turn, and after filling in the employer information section, MAC forwarded the application to UNUM. UNUM received proof of Ward's claim on April 11, 1994. See ibid. This notice was late under the terms of the policy, which required submission of proof of claim by November 5, 1993. See id., at 1280. By letter dated April 13, 1994, UNUM advised Ward that his claim was denied as untimely. See id., at 1279.

In September 1994, Ward filed suit against the MAC plan under § 502 of ERISA, 29 U. S. C. § 1132, to recover the disability benefits provided by the plan. UNUM appeared as a defendant and answered on behalf of itself and the plan. See 135 F. 3d, at 1279. To the District Court, Ward argued that under Elfstrom v. New York Life Ins. Co., 67 Cal. 2d 503, 512, 432 P. 2d 731, 737 (1967) (en banc), a California employer that administers an insured group health plan should be deemed to act as the agent of the insurance company. Therefore, Ward asserted, his notice of permanent disability to MAC, in February or March 1993, sufficed to supply timely notice to UNUM. See App. to Pet. for Cert. 30a. The Dis-

trict Court rejected this argument, concluding that the agency rule announced in *Elfstrom* "relate[s] to" ERISA plans; hence it is preempted under § 514(a), 29 U. S. C. § 1144(a). See App. to Pet. for Cert. 30a. The District Court further held that the *Elfstrom* rule is not saved from preemption as a law that "regulates insurance" within the compass of ERISA's insurance saving clause, § 514(b)(2)(A), 29 U. S. C. § 1144(b)(2)(A). App. to Pet. for Cert. 31a. Accordingly, the court rendered summary judgment in UNUM's favor. See *id.*, at 33a.

The Court of Appeals for the Ninth Circuit reversed, identifying two grounds on which Ward might prevail. First, following the Ninth Circuit's recent decision in *Cisneros* v. *UNUM Life Ins. Co.*, 134 F. 3d 939 (1998), the appeals court held that California's notice-prejudice rule is saved from ERISA preemption as a law that "regulates insurance"; under the notice-prejudice rule, Ward's late notice would not preclude his ERISA claim absent proof that the insurer suffered actual prejudice because of the delay. See 135 F. 3d, at 1280. Second, and contingently, the Ninth Circuit held that the *Elfstrom* rule, under which the employer could be deemed an agent of the insurer, does not "relate to" employee benefit plans, and therefore is not preempted by reason of ERISA. See 135 F. 3d, at 1287 (internal quotation marks omitted). The court accordingly remanded the case to the District Court for a determination whether UNUM suffered actual prejudice on account of the late submission of Ward's notice of claim; and if so, whether, under the reasoning of *Elfstrom*, Ward could nevertheless prevail because he had timely filed his claim. See 135 F. 3d, at 1289.

## II

California's notice-prejudice rule prescribes:

> "[A] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered substantial prejudice. Prejudice is not pre-

sumed from delayed notice alone. The insurer must show actual prejudice, not the mere possibility of prejudice." *Shell Oil Co.* v. *Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 760–761, 15 Cal. Rptr. 2d 815, 845 (1st Dist. 1993) (citations omitted).

The parties agree that the notice-prejudice rule falls under ERISA's preemption clause, §514(a), as a state law that "relate[s] to" an employee benefit plan.[1] Their dispute hinges on this question: Does the rule "regulat[e] insurance" and thus escape preemption under the saving clause, §514(b)(2)(A).[2]

Our precedent provides a framework for resolving whether a state law "regulates insurance" within the meaning of the saving clause. First, we ask whether, from a "common-sense view of the matter," the contested prescription regulates insurance. *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724, 740 (1985); see *Pilot Life*, 481 U. S., at 48. Second, we consider three factors employed to determine whether the regulation fits within the "business of insurance" as that phrase is used in the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U. S. C. §1011 *et seq.*: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." *Metropolitan Life,*

---

[1] Common-law rules developed by decisions of state courts are "State law" under ERISA. See 29 U. S. C. §1144(c)(1) ("The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law.").

[2] State laws that purport to regulate insurance by "deem[ing]" a plan to be an insurance company are outside the saving clause and remain subject to preemption. See §1144(b)(2)(B). Self-insured ERISA plans, therefore, are generally sheltered from state insurance regulation. See *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724, 747 (1985). Because this case does not involve a self-insured plan, this limitation on state regulatory authority is not at issue here.

471 U. S., at 743 (emphasis, citations, and internal quotation marks omitted); see also *Pilot Life,* 481 U. S., at 48–49.

### A

The Ninth Circuit concluded that California's notice-prejudice rule "regulates insurance" as a matter of common sense. See *Cisneros,* 134 F. 3d, at 945. We do not normally disturb an appeals court's judgment on an issue so heavily dependent on analysis of state law, see *Runyon* v. *McCrary,* 427 U. S. 160, 181–182 (1976), and we lack cause to do so here. The California notice-prejudice rule controls the terms of the insurance relationship by "requiring the insurer to prove prejudice before enforcing proof-of-claim requirements." *Cisneros,* 134 F. 3d, at 945. As the Ninth Circuit observed, the rule, by its very terms, "is directed specifically at the insurance industry and is applicable only to insurance contracts." *Ibid.;* see Brief for United States as *Amicus Curiae* 12 ("[O]ur survey of California law reveals no cases where the state courts apply the notice-prejudice rule as such outside the insurance area. Nor is this surprising, given that the rule is stated in terms of prejudice to an 'insurer' resulting from untimeliness of notice."). The rule thus appears to satisfy the common-sense view as a regulation that homes in on the insurance industry and does "not just have an impact on [that] industry." *Pilot Life,* 481 U. S., at 50.

UNUM and its *amici* urge in opposition to the Ninth Circuit's common-sense conclusion that the notice-prejudice rule is merely an industry-specific application of the general principle that "disproportionate forfeiture should be avoided in the enforcement of contracts." See Brief for American Council of Life Insurance et al. as *Amici Curiae* 13; Brief for Association of California Life and Health Insurance Companies as *Amicus Curiae* 5 ("[N]otice-prejudice is merely a branch of the broad doctrine of harmless error."). Given the tenet from which the notice-prejudice rule springs, UNUM

maintains, the rule resembles the Mississippi law at issue in *Pilot Life;* under that law, punitive damages could be sought for "bad faith" in denying claims without any reasonably arguable basis for the refusal to pay. See 481 U. S., at 50. We determined in *Pilot Life* that although Mississippi had "identified its law of bad faith with the insurance industry, the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Ibid.* "Any breach of contract," we observed, "and not merely breach of an insurance contract, may lead to liability for punitive damages under [the Mississippi common law of bad faith]." *Ibid.* Accordingly, we concluded, the Mississippi law did not "regulat[e] insurance" within the meaning of ERISA's saving clause. *Ibid.*

We do not find it fair to bracket California's notice-prejudice rule for insurance contracts with Mississippi's broad gauged "bad faith" claim for relief. Insurance policies like UNUM's frame timely notice provisions as conditions precedent to be satisfied by the insured before an insurer's contractual obligation arises. See 1 B. Witkin, Summary of California Law, Contracts § 726, p. 657 (9th ed. 1987); *Zurn Engineers* v. *Eagle Star Ins. Co.,* 61 Cal. App. 3d 493, 499, 132 Cal. Rptr. 206, 210 (2d Dist. 1976). Ordinarily, "failure to comply with conditions precedent . . . prevents an action by the defaulting party to enforce the contract." 14 Cal. Jur. 3d, Contracts § 245, p. 542 (3d ed. 1974). A recent California decision, *Platt Pacific Inc.* v. *Andelson,* 6 Cal. 4th 307, 862 P. 2d 158 (1993) (en banc), is illustrative. In that case, the California Supreme Court adhered to the normal course: It refused to excuse a plaintiff's failure to comply with a contractual requirement to timely demand arbitration, although there was no allegation that the defendant had been prejudiced by the plaintiff's lapse. The plaintiff had forfeited the right to pursue arbitration, the court concluded, for "the condition precedent [of a timely demand] was neither legally excused nor changed by modification of the par-

ties' written agreement." *Id.*, at 321, 862 P. 2d, at 167. "A contrary conclusion," the court stated, "would undermine the law of contracts by vesting in one contracting party the power to unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement." *Id.*, at 314, 862 P. 2d, at 162.

It is no doubt true that diverse California decisions bear out the maxim that "law abhors a forfeiture"[3] and that the

---

[3] UNUM cites a handful of California cases of this genre. They do not cast doubt on our disposition. In *Conservatorship of Rand,* 49 Cal. App. 4th 835, 57 Cal. Rptr. 2d 119 (4th Dist. 1996), the court found that a county court rule governing notice to a conservatee of potential liability for fees and costs did not comply with statutory notice requirements, but excused the defective notice because the conservatee had suffered no prejudice. See *id.*, at 838–841, 57 Cal. Rptr. 2d, at 121–123. *Rand* was not a contract case at all; it concerned the consequences of a court's violation of a state-created notice provision in the context of a judicial proceeding. *Industrial Asphalt Inc.* v. *Garrett Corp.,* 180 Cal. App. 3d 1001, 226 Cal. Rptr. 17 (2d Dist. 1986), concerned the notice requirements imposed by California's mechanics lien law and turned on principles of statutory rather than contract interpretation. See *id.*, at 1005–1006, 226 Cal. Rptr., at 18–19. In *Industrial Asphalt,* moreover, the complaining party had received actual notice of the claim underlying the lien. *Ibid.* Neither case suggests that California courts are generally unwilling or reluctant to enforce time conditions in private contracts as written.

The older decisions on which UNUM relies are no more instructive. The contract at issue in *Ballard* v. *MacCallum,* 15 Cal. 2d 439, 101 P. 2d 692 (1940) (en banc), contained contradictory clauses, some appearing to provide for forfeiture in the event of default, others appearing to contemplate an opportunity to cure. See *id.*, at 442, 101 P. 2d, at 694. The court invoked a general presumption against forfeitures only to resolve the conflict. See *id.*, at 444, 101 P. 2d, at 695. Finally, in *Henck* v. *Lake Hemet Water Co.,* 9 Cal. 2d 136, 69 P. 2d 849 (1937) (en banc), a water supplier attempted to escape the terms of a long-term delivery contract on the ground that the water recipient had not timely made annual payment. The California Supreme Court rejected the supplier's plea, observing that "in a proper case," equity permits a court to excuse a lapse like the recipient's in order to avoid forfeiture. See *id.*, at 141, 142, 69 P. 2d, at 852. The *Henck* court carefully weighed the competing interests of the parties

notice-prejudice rule is an application of that maxim. But it is an application of a special order, a rule mandatory for insurance contracts, not a principle a court may pliably employ when the circumstances so warrant. Tellingly, UNUM has identified no California authority outside the insurance-specific notice-prejudice context indicating that as a matter of law, failure to abide by a contractual time condition does not work a forfeiture absent prejudice. Outside the notice-prejudice context, the burden of justifying a departure from a contract's written terms generally rests with the party seeking the departure. See, e. g., American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp., 75 F. 3d 1401, 1413 (CA9 1996); CQL Original Products, Inc. v. National Hockey League Players' Assn., 39 Cal. App. 4th 1347, 1357–1358, n. 6, 46 Cal. Rptr. 2d 412, 418, n. 6 (4th Dist. 1995). In short, the notice-prejudice rule is distinctive most notably because it is a rule firmly applied to insurance contracts, not a general principle guiding a court's discretion in a range of matters.[4]

---

and relied in part on the water supplier's fault in inducing the late payment. See id., at 144–145, 69 P. 2d, at 853; cf. Restatement (Second) of Contracts § 229, Comment c, Reporter's Note (1979) (courts are likely to excuse obligor's failure strictly to adhere to a performance timetable where obligee has induced the failure).

These decisions support the uncontested propositions that the law disfavors forfeitures and that in case-specific circumstances California courts will excuse the breach of a time or notice provision in order to avoid an inequitable forfeiture. None of the decisions even remotely suggests that failures to comply with contractual notice periods are excused as a matter of law absent prejudice; none, therefore, suggests that the notice-prejudice rule is merely a routine application of a general antiforfeiture principle.

[4] UNUM features § 229 of the Restatement (Second) of Contracts (1979), and urges that the notice-prejudice rule fits within its compass. Section 229 provides that "[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." The notice-prejudice rule, however, is mandatory rather than permissive; it requires California courts to excuse a failure to

California's insistence that insurers show prejudice before they may deny coverage because of late notice is grounded in policy concerns specific to the insurance industry. See Brief for Council of State Governments et al. as *Amici Curiae* 10–14. That grounding is key to our decision. Announcing the notice-prejudice rule in *Campbell* v. *Allstate Ins. Co.*, 60 Cal. 2d 303, 384 P. 2d 155 (1963) (en banc), the California Supreme Court emphasized the "public policy of this state" in favor of compensating insureds. *Id.*, at 307, 384 P. 2d, at 157; see *ibid.* (weighing the relative burdens of notice-prejudice on insurers and insureds). Subsequent notice-prejudice rulings have likewise focused on insurance industry policy and governance. See, *e. g., Hanover Ins. Co.* v. *Carroll*, 241 Cal. App. 2d 558, 570, 50 Cal. Rptr. 704, 712 (1st Dist. 1966) (public policy respecting compensation of insured injured parties); *Northwestern Title Security Co.* v. *Flack*, 6 Cal. App. 3d 134, 143–144, 85 Cal. Rptr. 693, 698 (1st Dist. 1970) (extending notice-prejudice rule to "claims-type" policies, rejecting contention that sound public policy required limitation of rule to "occurrence-type" policies); *Pacific Employers Ins. Co.* v. *Superior Court*, 221 Cal. App. 3d 1348, 1359–1360, 270 Cal. Rptr. 779, 784–785 (2d Dist. 1990) (evaluating insurance industry public policy considerations in reaching the opposite conclusion). Decisions of courts in other States similarly indicate that the notice-prejudice rule addresses policy concerns specific to insurance. See, *e. g., Cooper* v. *Government Employees Ins. Co.*, 51 N. J. 86, 94, 237 A. 2d 870, 874 (1968) (failure to adopt notice-prejudice would "disserve the public interest, for insurance is an instrument of a social policy that the victims of negligence be compensated"); *Great American Ins. Co.* v. *C. G. Tate Construction Co.*, 303 N. C. 387, 395, 279 S. E. 2d 769, 774 (1981) ("The [notice-prejudice] rule we adopt today has the advan-

provide timely notice whenever the insurer cannot carry the burden of showing actual prejudice, and it allows no argument over the materiality of the time prescription.

tages of promoting social policy and fulfilling the reasonable expectations of the purchaser while fully protecting the ability of the insurer to protect its own interests."); *Alcazar* v. *Hayes*, 982 S. W. 2d 845, 851–853 (Tenn. 1998) (surveying the "compelling public policy justifications" that support departing from traditional contract interpretation in favor of notice-prejudice).

In sum, the Ninth Circuit properly concluded that notice-prejudice is a rule of law governing the insurance relationship distinctively. We reject UNUM's contention that the rule merely restates a general principle disfavoring forfeitures and conclude instead that notice-prejudice, as a matter of common sense, regulates insurance.

### B

We next consider the criteria used to determine whether a state law regulates the "business of insurance" within the meaning of the McCarran-Ferguson Act. Preliminarily, we reject UNUM's assertion that a state regulation must satisfy all three McCarran-Ferguson factors in order to "regulate insurance" under ERISA's saving clause. Our precedent is more supple than UNUM conceives it to be. We have indicated that the McCarran-Ferguson factors are "considerations [to be] weighed" in determining whether a state law regulates insurance, *Pilot Life*, 481 U. S., at 49, and that "[n]one of these criteria is necessarily determinative in itself," *Union Labor Life Ins. Co.* v. *Pireno*, 458 U. S. 119, 129 (1982). In *Metropolitan Life*, the case in which we first used the McCarran-Ferguson formulation to assess whether a state law "regulates insurance" for purposes of ERISA's saving clause, we called the McCarran-Ferguson factors "relevant"; we did not describe them as "required." See 471 U. S., at 743; *O'Connor* v. *UNUM Life Ins. Co. of America*, 146 F. 3d 959, 963 (CADC 1998) ("That the factors are merely 'relevant' suggests that they need not all point in the same direction, else they would be 'required.'"). As the Ninth

Circuit correctly recognized, *Metropolitan Life* asked first whether the law there in question "fit a common-sense understanding of insurance regulation," *Cisneros*, 134 F. 3d, at 945, and then looked to the McCarran-Ferguson factors as checking points or "guideposts, not separate essential elements . . . that must each be satisfied" to save the State's law, *id.*, at 946.

The first McCarran-Ferguson factor asks whether the rule at issue "has the effect of transferring or spreading a policyholder's risk." *Metropolitan Life*, 471 U. S., at 743 (internal quotation marks omitted). The Ninth Circuit determined that the notice-prejudice rule does not satisfy that criterion because it "does not alter the allocation of risk for which the parties initially contracted, namely the risk of lost income from long-term disability." *Cisneros*, 134 F. 3d, at 946. The United States as *amicus curiae*, however, suggests that the notice-prejudice rule might be found to satisfy the McCarran-Ferguson "risk-spreading" factor: "Insofar as the notice-prejudice rule shifts the risk of late notice and stale evidence from the insured to the insurance company in some instances, it has the effect of raising premiums and spreading risk among policyholders." Brief for United States as *Amicus Curiae* 14. We need not pursue this point, because the remaining McCarran-Ferguson factors, verifying the common-sense view, are securely satisfied.

Meeting the second factor, the notice-prejudice rule serves as "an integral part of the policy relationship between the insurer and the insured." *Metropolitan Life*, 471 U. S., at 743. California's rule changes the bargain between insurer and insured; it "effectively creates a mandatory contract term" that requires the insurer to prove prejudice before enforcing a timeliness-of-claim provision. *Cisneros*, 134 F. 3d, at 946. As the Ninth Circuit stated: "The [notice-prejudice] rule dictates the terms of the relationship be-

tween the insurer and the insured, and consequently, is integral to that relationship." *Ibid.*[5]

The third McCarran-Ferguson factor—which asks whether the rule is limited to entities within the insurance industry—is also well met. As earlier explained, see *supra*, at 368–373, California's notice-prejudice rule focuses on the insurance industry. The rule "does not merely have an impact on the insurance industry; it is aimed at it." *FMC Corp.* v. *Holliday*, 498 U. S. 52, 61 (1990).

### III

UNUM and its *amici* assert that even if the notice-prejudice rule is saved under 29 U. S. C. § 1144(b)(2)(A), it is nonetheless preempted because it conflicts with substantive provisions of ERISA in three ways. UNUM first contends that the notice-prejudice rule, by altering the notice provisions of the insurance contract, conflicts with ERISA's requirement that plan fiduciaries act "in accordance with the documents and instruments governing the plan." § 1104(a)(1)(D). According to UNUM, § 1104(a)(1)(D) preempts any state law contrary to a written plan term. See Brief for Petitioner 32–33; Tr. of Oral Arg. 8.

UNUM's "contra plan term" argument overlooks controlling precedent and makes scant sense. We have repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A). See *Metropolitan Life*, 471 U. S., at 758 ("Massachusetts' mandated-benefit law is a 'law which regulates insurance' and so is not pre-empted by ERISA as it applies to insurance contracts

---

[5] We reject UNUM's suggestion that because the notice-prejudice rule regulates only the administration of insurance policies, not their substantive terms, it cannot be an integral part of the policy relationship. See *Metropolitan Life*, 471 U. S., at 728, n. 2 (including laws regulating claims practices and requiring grace periods in catalog of state laws that regulate insurance).

purchased for plans subject to ERISA."); *FMC Corp.*, 498 U. S., at 64 ("[I]f a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts."). Under UNUM's interpretation of § 1104(a)(1)(D), however, States would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents. This interpretation would virtually "rea[d] the saving clause out of ERISA." *Metropolitan Life*, 471 U. S., at 741.[6]

UNUM next contends that ERISA's civil enforcement provision, § 502(a), 29 U. S. C. § 1132(a), preempts any action for plan benefits brought under state rules such as notice-prejudice. Whatever the merits of UNUM's view of § 502(a)'s preemptive force,[7] the issue is not implicated here.

---

[6] We recognize that applying the States' varying insurance regulations creates disuniformities for "national plans that enter into local markets to purchase insurance." *Metropolitan Life*, 471 U. S., at 747. As we have observed, however, "[s]uch disuniformities . . . are the inevitable result of the congressional decision to 'save' local insurance regulation." *Ibid.*

[7] We discussed this issue in *Pilot Life Ins. Co. v. Dedeaux*, 481 U. S. 41 (1987). That case concerned Mississippi common law creating a cause of action for bad-faith breach of contract, law not specifically directed to the insurance industry and therefore not saved from ERISA preemption. In that context, the Solicitor General, for the United States as *amicus curiae*, urged the exclusivity of § 502(a), ERISA's civil enforcement provision, and observed that § 502(a) was modeled on the exclusive remedy provided by § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U. S. C. § 185. The Court agreed with the Solicitor General's submission. 481 U. S., at 52–56.

In the instant case, the Solicitor General, for the United States as *amicus curiae*, has endeavored to qualify the argument advanced in *Pilot Life*. See Brief 20–25. Noting that "LMRA Section 301 does not contain any statutory exception analogous to ERISA's insurance savings provision," the Solicitor General now maintains that the discussion of § 502(a) in *Pilot Life* "does not in itself require that a state law that 'regulates insurance,' and so comes within the terms of the savings clause, is nevertheless preempted if it provides a state-law cause of action or remedy." Brief 25; see also *id.*, at 23 ("[T]he insurance savings clause, on its face,

Ward sued under § 502(a)(1)(B) "to recover benefits due . . . under the terms of his plan." The notice-prejudice rule supplied the relevant rule of decision for this § 502(a) suit. The case therefore does not raise the question whether § 502(a) provides the sole launching ground for an ERISA enforcement action.

Finally, we reject UNUM's suggestion that the notice-prejudice rule conflicts with § 503 of ERISA, 29 U. S. C. § 1133, which requires plans to provide notice and the opportunity for review of denied claims, or with Department of Labor regulations providing that "[a] claim is filed when the requirements of a reasonable claim filing procedure . . . have been met," 29 CFR § 2560.503–1(d) (1998). By allowing a longer period to file than the *minimum* filing terms mandated by federal law, the notice-prejudice rule complements rather than contradicts ERISA and the regulations. See Brief for United States as *Amicus Curiae* 19, n. 9.

## IV

Ward successfully maintained in the Ninth Circuit that MAC had timely notice of his disability and that his notice to MAC could be found to have served as notice to UNUM on the theory that MAC, as administrator of the group policy, acted as UNUM's agent. The policy itself provides otherwise:

> "For all purposes of this policy, the policyholder [MAC] acts on its own behalf or as agent of the employee. Under no circumstances will the policyholder be deemed the agent of the Company [UNUM] without a written authorization." App. to Pet. for Cert. 44a.

---

saves state law conferring causes of action or affecting remedies that regulate insurance, just as it does state mandated-benefits laws."). We need not address the Solicitor General's current argument, for Ward has sued under § 502(a)(1)(B) for benefits due, and seeks only the application of saved state insurance law as a relevant rule of decision in· his § 502(a) action.

California law rendered that policy provision ineffective, the Ninth Circuit appeared to conclude, because under the rule stated in *Elfstrom* v. *New York Life Ins. Co.*, 67 Cal. 2d, at 512, 432 P. 2d, at 737, "the employer is the agent of the insurer in performing the duties of administering group insurance policies." Thus, the Ninth Circuit instructed that, on remand, if UNUM was found to have suffered actual prejudice on account of Ward's late notice of claim, the District Court should then determine whether the claim was timely under *Elfstrom*. 135 F. 3d, at 1289.

Ward does not argue in this Court that the *Elfstrom* rule, as comprehended by the Ninth Circuit, is a law that "regulates insurance." See Brief for Respondent 35 (the Ninth Circuit applied "general principles of agency law," not a rule determining when "employers who administer insured plans are agents of the insurer as a *matter of law*"). Indeed, it is difficult to tell from the Court of Appeals opinion precisely what rule or principle that court derived from *Elfstrom*. See Brief for Respondent 35 ("[T]he court below did not actually apply the *Elfstrom* rule in this case."); 135 F. 3d, at 1283, and n. 6 (endorsing the reasoning of *Paulson* v. *Western Life Ins. Co*, 292 Ore. 38, 636 P. 2d 935 (1981), an Oregon Supreme Court decision that purported to reconcile *Elfstrom* with an apparently conflicting body of case law). Whatever the contours of *Elfstrom* may be, the Ninth Circuit held that the state law emerging from that case does not "relat[e] to" an ERISA plan within the meaning of § 1144(a), and therefore escapes preemption. See 135 F. 3d, at 1287.

In this determination, the Ninth Circuit was mistaken. The Court of Appeals stated, without elaboration, that *Elfstrom* does not dictate "the manner in which the plan will be administered," and therefore is consistent with this Court's ERISA preemption precedent. *Ibid.;* see *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645, 657–658 (1995) (identifying among laws that "relat[e] to" employee benefit plans those that

"mandat[e] employee benefit structures or their administration"). The Ninth Circuit's statement is not firmly grounded.

As persuasively urged by the United States in its *amicus curiae* brief, deeming the policyholder-employer the agent of the insurer would have a marked effect on plan administration. It would "forc[e] the employer, as plan administrator, to assume a role, with attendant legal duties and consequences, that it has not undertaken voluntarily"; it would affect "not merely the plan's bookkeeping obligations regarding to whom benefits checks must be sent, but [would] also regulat[e] the basic services that a plan may or must provide to its participants and beneficiaries." Brief 27. Satisfied that the *Elfstrom* rule "relate[s] to" ERISA plans, we reject the Ninth Circuit's contrary determination.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*