**Thomas R. KERN, Plaintiff,**

v.

**POLAROID CORPORATION and the Severance Program Committee, Defendants.**

**No. Civ.A. 99–12059–REK.**

United States District Court,
D. Massachusetts.

March 27, 2000.

---

Kimberly A. Simpson, Howard Merten, Vetter & White, Providence, RI, for Thomas R. Kern, plaintiff.

Daniel S. Tarlow, Glovsky & Associates, Boston, MA, Daniel S. Tarlow, Glovsky & Tarlow LLP, Boston, MA, for Polaroid Corporation, defendant.

## Opinion

KEETON, District Judge.

### I. The Matter Pending for Decision

Pending for decision after oral argument is the following motion:

Defendants' Motion to Dismiss (Docket No. 14, filed January 18, 2000) with Memorandum in Support (Docket No. 15, filed January 18, 2000). Plaintiff has filed Plaintiff Thomas Kern's Objection to Defendants' Motion to Dismiss (Docket No. 16, filed February 16, 2000).

### II. Background Allegations and Claims

Plaintiff's Complaint (Docket No. 1, filed October 6, 1999) alleges background facts as follows:

Plaintiff is a resident of Massachusetts and former employee of defendant Polaroid. Defendant Polaroid is a Delaware corporation and a resident of Massachusetts.

Defendant Severance Program Committee, on information and belief, is affiliated and associated with defendant Polaroid, consists of employees of Polaroid, and is and was at all material times the designated plan administrator of Polaroid's 1997 Severance Program, also referred to as the Severance Plan.

The Transitional Assistance Process, also sometimes referred to as the Tap Plan, is and was at all material times, on information and belief, an employee benefit plan as defined in ERISA, 29 U.S.C. § 1002(1) and (5), adopted by Polaroid on or about June 26, 1996. A copy of the Tap Plan is attached to the Complaint as Exhibit A.

On information and belief, Polaroid established the Tap Plan and was the plan administrator of the Tap Plan.

On or about January 1, 1998, Polaroid sponsored the Severance Plan. The Severance Plan is an employee benefit plan as defined under ERISA, 29 U.S.C. § 1002(1). Polaroid designated the Severance Program Committee as the plan administrator. A copy of the Severance Plan is attached to the Complaint as Exhibit B, and a copy of Summary Plan Description of the Severance Plan is attached as Exhibit C.

The Complaint states claims in three counts, as follows:

### Count I

Count I seeks judgment for benefits allegedly wrongfully denied under the Tap Plan, plus interest, costs, and attorney's fees under 29 U.S.C. § 1132(g). It alleges that Kern began employment with Polaroid in July 1972 and was at all material times an employee of Polaroid. In December 1997 Kern was employed as an engineering member of the New Bedford High Resolution Imaging Division, with an Information Management (IM) component. On December 8, 1997, plaintiff requested in writing voluntary severance from Polaroid and participation in the Tap Plan then in effect. A copy of his request is attached to the Complaint as Exhibit D.

The Complaint alleges that under the terms of the Tap Plan plaintiff Kern would have been eligible to receive a lump sum payment of 4% of his annualized pay for every year of service, plus one year maximum bonus, plus vacation and "L" days earned, plus distribution of monies from his ESOP account and profit sharing plan.

The Complaint alleges that the Tap Plan was available to all Polaroid employees, including plaintiff Kern, subject to management's approval, when an otherwise defined severance program was not in effect.

Plaintiff allegedly received no response to his request of December 8, 1997. He scheduled a meeting with Polaroid employee Garry Wheeler, a supervisor in the Information Management division, to discuss the request for severance under the Tap Plan.

Before the scheduled meeting, Polaroid announced the Severance Plan, to take effect January 1, 1998.

On December 14, 1997, plaintiff Kern wrote to Mr. Wheeler to reiterate Kern's interest in voluntary severance. A copy of this communication is attached to the Complaint as Exhibit E.

The Complaint alleges that on December 14, 1997, and until January 1, 1998, the Tap Plan was in effect.

The Complaint alleges that on December 22, 1997, Mr. Wheeler responded to Kern in writing and denied his request on the ground that "[the 1997 Severance Plan] will not be a voluntary program." A copy of this communication is attached to the Complaint as Exhibit E.

The Complaint alleges that Polaroid's denial of plaintiff Kern's request for severance was based on eligibility criteria for the Severance Plan, and not on any criteria relative to the Tap Plan in effect.

The Complaint, finally in Count I, alleges that Polaroid's actions constituted an unlawful denial of plaintiff's participation in and eligibility for benefits under the Tap Plan, and a breach of fiduciary duties. The Complaint alleges also that Polaroid's notice of denial failed to satisfy the criteria mandated under ERISA, 29 U.S.C. § 1133.

## Count II

Count II seeks judgment against Polaroid for contractual damages in the amount of $60,000 plus interest, costs, and attorney's fees.

The supporting allegations are that the Tap Plan constituted, in the alternative to the characterization stated in Count I, an express written policy between Polaroid and its employees whereby employees who requested participation would be eligible to receive severance benefits as provided under the terms of that express written policy, that the obligation thus became a legally enforceable contract, and having failed to pay as contractually promised, Polaroid is liable for breach of contract.

## Count III

Count III seeks judgment "against defendants in the amount of $75,000, plus interest, costs, and attorney's fees under 29 U.S.C. § 1132(g)(1)." Although the prayer for relief does not explicitly say so, an impartial objective reading of this prayer is that it requests a judgment declaring what may be called "joint entire liability" for the full amount claimed, so that plaintiff Kern would be entitled to collect in full from either party, though of course not entitled to collect more than the stated amount of the judgment (including interest, costs, and attorney's fees), even if collecting partly from one and partly from the other.

## III. Exotic Variations on Judicial Review

### A. Introduction

Inescapably, regardless of how this civil action is characterized by the different parties, or even by all of them together (if at some point they might decide to take a common position), this civil action is to some extent (if not entirely) a proceeding in a United States district court for judicial review of an out-of-court decision. In paradigmatic instances of judicial review in a United States district court, the decision under review is an agency decision. That is, it is a decision of an administrative agency within some governmental entity—national, regional, state, or local. This case, however, is not within that paradigmatic pattern. Instead, the out-of-court

decisions under review are those of one or another of several non-governmental entities.

One entity is Polaroid, a corporation organized under the laws of Delaware and so deeply engaged in business in Massachusetts as to be treated as a citizen of Massachusetts for various legal purposes. For example, it is clear that this court does not have diversity jurisdiction in this case.

Other legally recognized entities are the natural persons who are named by the Complaint as participants in some of the decisions under review. They are identified as members of the Severance Program Committee or as a supervisor (Garry Wheeler) of plaintiff Kern in the Information Management division of Polaroid.

Reasonably disputable, unsettled, issues of law may exist as to whether one or more of the entities participating in the decisions under review is a legally recognized and legally accountable entity against which a United States district court has authority to grant monetary relief, or declaratory relief, or both, or neither.

## B. Presumptive Standard for Review of Private Decisionmaking

Unless good cause is shown for doing otherwise, the court expects, if it performs the function of judicial review as to any part of this case, to apply the standard that the reviewing court is to hold the out-of-court decision(s) unlawful if, and only if, arbitrary, or capricious, an abuse of discretion, or otherwise not in accordance with law. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Recupero v. New England Tel. & Tel. Co.,* 118 F.3d 820 (1st Cir.1997). Upon an appropriate showing of good cause for doing so, the court may apply a less deferential standard of "de novo" review as explained in *Firestone* and *Recupero,* as distinguished from exercising "plenary" jurisdiction to resolve factual issues anew.

## C. The Record for Judicial Review

Ordinarily the focal point of a court's judicial review of an out-of-court decision is the record on which that decision was made. *Recupero, supra,* at 822, 829–31. *Cf. Sierra Club v. Marsh,* 976 F.2d 763, 769 (1st Cir.1992) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and numerous other precedents, with respect to judicial review of governmental decisionmaking on an "administrative record").

If the out-of-court decisions were properly made, the Record for Judicial Review is ordinarily available and can be placed before the court by stipulation of the parties.

If a dispute exists about whether some particular documents do or do not belong in the record, it may be necessary for the court to convene a hearing—perhaps even an evidentiary hearing—to provide an adequate basis for the court to decide this kind of dispute. Opposing attorneys are to confer and jointly file, before the next Case Management Conference in this case, their Agreement of All Parties as to Part of the Record for Judicial Review, including within it only those documents that, without dispute, are to be included in the record.

## D. Scope of the Court's Jurisdiction

The court and the parties must be attentive to limitations on the court's jurisdiction in a case involving judicial review. *See Recupero, supra,* at 824–30. Ordinarily the court does not have plenary jurisdiction to try a claim rather than judicially review decisions of others, unless the claim is "independent" as explained in *Recupero,* at 834–36. Plaintiff may be asserting state-law claims in this case and contending that the claims are "independent" and subject to plenary trial in contrast with judicial review. (*See* Counts Two and Three of the Complaint, asserting claims

for breach of contract and breach of fiduciary duties.)

When the court lacks diversity jurisdiction, it may also lack supplemental jurisdiction over state-law claims, or it may conclude that in the exercise of discretion it should choose not to exercise supplemental jurisdiction. See *Recupero, supra,* at 824–30.

### E. Trial or Evidentiary Hearing

If any party claims a right to a trial or evidentiary hearing in a civil action for judicial review, the court may require that party to show cause for holding a trial or an evidentiary hearing in this case, and for the kind and scope of trial or evidentiary hearing claimed. *See Recupero, supra,* at 834–35 (considering "independent claims").

### IV. Standards for Considering Dispositive Motions

Provisions in the Federal Rules of Civil Procedure for dispositive motions include those concerning motions to dismiss, *e.g.,* Fed.R.Civ.P. 12, motions for summary judgment, Fed.R.Civ.P. 56, and motions for judgment during trial, *e.g.,* Fed. R.Civ.P. 50, and after trial, *e.g.* Fed. R.Civ.P. 59, 60. All of these provisions were fashioned with a focus primarily upon paradigmatic tort, contract, and property cases. They do not fit well in civil actions for judicial review.

The traditional culture and practice of the trial bench and trial bar nevertheless lead trial lawyers and trial judges often to frame their motions and orders in patterns used traditionally in paradigmatic tort, contract, and property cases rather than in a distinctive form designed especially for civil actions involving judicial review.

In the present case, defendants have chosen to call their motion a motion to dismiss, and plaintiff has seemed entirely willing to have the substantive and procedural issues in dispute considered by the court under traditional standards rather than standards fashioned for cases of judicial review.

For prudential and pragmatic reasons explained in later parts of this opinion, I conclude that I should depart to some extent from standards traditionally applied to motions to dismiss. The context in which I reach this conclusion is one in which I am considering what rulings I should make at this time with respect to federal preemption of state-law claims and with respect to the plaintiff's "pretext" claims and their relationship to prohibitions against application of "invidious" factors in decisionmaking, even by a private decisionmaker having discretion not ordinarily reviewable at all in the absence of "discrimination" on "invidious" grounds.

### V. Federal Preemption

The broadly stated guideline for ERISA preemption is that ERISA provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). This statement, however, is preceded by an "except" clause referring to subsection (b) of this section. The statement of that exception in subsection (b) is commonly called the ERISA "saving clause." It provides:

**(b) Construction and application**

(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

(2)(A) Except as provided in subparagraph (B), *nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance,* banking, or securities.

(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or

investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(1) and (2) (underscoring added).

■ Until the Supreme Court spoke to the subject in 1999, a reader of the statutory provisions might have wondered whether "State laws" referred only to statutes and not to authorized agency administrative regulations and state judicial decisions within the common law tradition. That issue has been resolved in favor of the proposition that "State laws" include judicial decisions that meet other criteria of the saving clause.

The key words "regulates insurance" in § 514(b)(2)(A), and "relate to" in § 514(a), once again require interpretation, for their meaning is not "plain"; sensible construction of ERISA, our decisions indicate, requires that we measure these words in context. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (noting that repeated calls for interpretation are not surprising in view of "the wide variety of state statutory and decisional law arguably affected" by ERISA's preemption and saving clauses).

The context here is a suit to recover disability benefits under an ERISA-governed insurance policy issued by defendant-petitioner UNUM Life Insurance Company of America (UNUM). Plaintiff-respondent John E. Ward submitted his proof of claim to UNUM outside the time limit set in the policy, and UNUM therefore denied Ward's claim.

*UNUM Life Insurance Company of America v. Ward,* 526 U.S. 358, 363, 119 S.Ct. 1380, 1384, 143 L.Ed.2d 462 (1999). Affirming one ruling of the Court of Appeals for the Ninth Circuit and overturning another ruling of that circuit, the Court declared:

California's notice-prejudice rule, we agree, is a "law ... which regulates insurance," and is therefore saved from preemption by ERISA. California's agency law, we further hold, does "relate to" employee benefit plan, and therefore does not occupy ground outside ERISA's preemption clause.

*Id.,* 526 U.S. at 364, 119 S.Ct. at 1385.

Guided by this Supreme Court determination, I conclude that the state-law claims alleged in Counts II and III of the complaint before me do "relate to" employee benefit plans and do occupy ground within the scope of ERISA's preemption clause. The saving clause does not protect them from preemption.

■ It is true that the complaint before me does not label as "employee benefit plans" the Plans under which plaintiff makes state-law claims. But the supporting allegations and the prayers for relief in Counts II and III, as recited in Part II of this opinion, do describe the relief requested as an award of benefits that plaintiff, as an employee of Polaroid at the time of the alleged events, was entitled to receive under the plans. A common-sense interpretation of the complaint is that plaintiff's claims are for benefits due him under one, or the other, or both of the Polaroid Severance Plan and Tap Plan.

This common-sense view of the matter is supported also by the declarations on the subject of the ERISA preemption clause and saving clause in recent First Circuit cases. *See, e.g., Hampers v. W.R. Grace & Co.,* 202 F.3d 44 (1st Cir.2000) (plaintiff brought state-law contract claim against former employer for failure to enroll plaintiff in an ERISA-regulated employee pension benefit plan—court held that ERISA preempted state claim); *Rodowicz v. Massachusetts Mutual Life Ins. Co.,* 192 F.3d 162 (1st Cir.1999) (retired employees brought ERISA and state common-law claims against former employer based on employer's alleged failure to inform them it was contemplating early retirement in-

centive program—court held that voluntary termination program did not fall within the scope of ERISA because it did not require an ongoing administrative program); *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1 (1st Cir.1999) (beneficiary of health plan governed by ERISA brought suit in state court alleging, inter alia, negligence by insurer and utilization review firm hired by it, in denying request for placement of beneficiary in requested psychiatric facility—court held that ERISA preempted claims); *McMahon v. Digital Equip. Corp.,* 162 F.3d 28 (1st Cir.1998) (former employee terminated after returning from disability leave brought state court action against employer, plan administrator, and plan manager alleging violations of ERISA, breach of contract, negligence, and intentional interference with advantageous business relationship—court held that ERISA preempted all state-law claims except claim that employer committed breach of contractual promise to relocate employee); *Turner v. Fallon Community Health Plan,* 127 F.3d 196 (1st Cir.1997) (administrator of deceased patient's estate made ERISA and state-law claims, including breach of contract, wrongful death, and others, against health care insurer that refused to provide coverage for treatment regime proposed by patient and her doctor to address patient's metastasized breast cancer—court held that ERISA preempted state-law claims).

## VI. Remaining ERISA Claims

The federal preemption of state-law claims, for reasons stated in Part V above, leaves unanswered some potentially dispositive issues about remedies, if any, available to the plaintiff under ERISA.

Is plaintiff entitled to a decision in his favor in this court for some remedy under ERISA? Is he entitled to some remedy in this court as a matter of law? If not, is he entitled as a matter of law to a remand with directions to an out-of-court decisionmaker about precisely how to proceed to a final disposition, either with or without a prospect of later judicial review in this court? Is he entitled to some further hearing in this court before the two preceding questions are answered? Is he entitled to some form of "de novo" hearing, as that phrase is used in *Bruch, supra,* and *Recupero, supra,* before all these questions are answered?

I conclude, on pragmatic and prudential grounds, that it is better that I do not attempt to answer all these questions on the record now before me, sparse as it is in relation to reasoned arguments *on the law.* I conclude that the statutory provisions and federal-law decisions identified in the parties' submissions and in this opinion leave too many questions *of law* unanswered to make it appropriate for me to make all the decisions on issues of first impression that would be required. I will instead deny the defendant's motion to dismiss and invite submissions by the parties as to proposed ways of proceeding to final disposition of this case.

This is, perhaps, a departure from traditional standards and practices for deciding a motion to dismiss. It grows out of the need for identification of one or more precisely framed proposals, by plaintiff or by defendant, that I can determine to be both legally supportable and sufficiently likely to be factually supportable to warrant committing resources to a hearing, either before a private decisionmaker on remand, or before this court.

The most likely possibilities involve issues regarding claims of pretext and discrimination in employment on invidious grounds.

## VII. Pretext and Discrimination in Employment on Invidious Grounds

Plaintiff has argued, in the submissions filed and at oral argument, that the court should rule as a matter of law that defendants discriminated unlawfully against plaintiff by failing to award him the benefits he claims to be due under the Tap Plan. Defendants have argued, in the submissions filed and at oral argument, that

the court should rule as a matter of law that all decisions made by any of the employees of Polaroid on behalf of the corporation and in the administration of the different plans were valid exercises of discretion. I am not persuaded that either of these positions is sustainable under applicable statutes and precedents.

For the reasons explained in Part V of this opinion, federal preemption precludes decision of this controversy on state-law grounds. Remaining for consideration, however, are unsettled questions of law bearing upon how plaintiff's claims of pretext and discrimination in employment on invidious grounds should be resolved as claims under ERISA, as interpreted and applied in cases such as *Bruch, supra,* and *Recupero, supra.*

A very viable possibility that no party to this civil action wishes to occur, as its primary position, but may wish in preference to final judgment against it on the merits, is that the court may remand to a private decisionmaker for additional proceedings, including a federal-law decision authorized by ERISA and precedents interpreting it. To be capable of being judicially reviewed under applicable standards of judicial review, such a decision by a private decisionmaker must be explained on grounds that are sufficient to enable this court to engage in reasoned judicial review to determine whether the decision is founded on an error of law or an insupportable factual premise, or is in some other way an abuse of discretion.

Even if plaintiff persuades the judicially reviewing court that plaintiff is entitled in some forum to have its pretext claim adjudicated on the merits as a claim under ERISA rather than to be dismissed, it does not follow that a United States district court has plenary jurisdiction to conduct a jury trial to decide that claim on the merits. It may be necessary, instead, to remand to a private forum authorized by a valid plan.

For these reasons, I will deny the motion to dismiss, without undertaking now to decide disputable legal questions on the scope of this court's authority in this exotic form of judicial review. The denial of the motion to dismiss carries no implication one way or the other on these reserved questions.

## INTERLOCUTORY ORDER

For the foregoing reasons, it is OR-DERED

(1) Plaintiff's state-law claims asserted in Counts II and III are DISMISSED because of federal preemption under ERISA.

(2) Defendants' Motion to Dismiss (Docket No. 14) is DENIED except to the extent stated in paragraph (1) above.

(3) A Case Management Conference to schedule further proceedings necessary to final disposition of this civil action is set for April 25, 2000, at 2:30 p.m.