BARKETT, Circuit Judge,
concurring, in which POLLAK, District Judge, joins:
I concur in the majority opinion and write only to expand on the question of whether an ERISA plan provider and its *1150 insured may agree that the plan’s terms are to be construed in accordance with state law.
I start with the principle that the parties to a contract have the right to define the terms of that contract. Thus, in the insurance context, parties are free to agree upon the extent of coverage, to agree to limit insurance liability through exclusions or other contingencies, and to agree to the manner in which the disputed meaning of contractual terms should be decided.[1] The question before this Court is whether ERISA precludes the parties to an agreement from using state law to define an ERISA contract’s terms. In the absence of any compelling rationale to the contrary, I am not persuaded that ERISA sweeps so broadly.
To determine the extent of Congress’ preemptive intent, courts first look to the language of the statute’s preemption clause. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-100, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In this case, ERISA’s preemption clause, 29 U.S.C. § 1144(a), contains no language that specifically prohibits the application of the choice of law agreement in this case.[2] The preemption language of ERISA, although broad, does not address the question of whether a choice of law agreement may be enforced. It simply provides that:
[e]xcept as provided in subsection (b) of this section, the provisions of this sub-chapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a). To answer the question presented here, we must discern the meaning of the terms “relates to” and “State laws.”
The Supreme Court has recognized that ERISA’s preemption clause is “not a model of legislative drafting,” Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and has provided guidance to resolve the question before us. In De Buono v. NYSA-ILA Medical and Clinical Services Fund, the Court explained:
in our earlier cases, we noted that the literal text of [ERISA’s preemption clause] [wa]s “clearly expansive.” (citing by example New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 *1151 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (“Travelers ”)). But we were quite clear ... that the text could not be read to “extend to the furthest stretch of its indeterminacy, [or] for all practical purposes preemption would never run its course,” for “[r]eally, universally, relations stop nowhere.”
520 U.S. 806, 813, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (citing H. James, Roderick Hudson xli (New York ed., World’s Classics 1980)). See also California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc., 519 U.S. 316, 335, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (“Dillingham”) (explaining that application of the preemption clause “was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else.”)
In De Buono, the Supreme Court noted that in the early ERISA preemption clause cases, the state laws at issue had a clear “connection with or reference to ERISA benefit plans.” 520 U.S. at 813, 117 S.Ct. 1747 (internal citations omitted). Thus, in those cases it was “not ... necessary to rely on the expansive character of ERISA’s literal language in order to find preemption.” Id. Ultimately, when confronted with the question of whether Congress intended ERISA’s “relates to” language to modify “the starting presumption that Congress does not intend to supplant state law,” the Supreme Court explained that it “unequivocally concluded that it did not ....” Id.
In De Buono, the Supreme Court also acknowledged that its “prior attemptfs] to construe the phrase ‘relate[s] to’ d[id] not give ... much help [in] drawing the line” between the issues preempted by § 1144(a) and those unaffected by the provision. De Buono, 520 U.S. at 813, 117 S.Ct. 1747 (citing Travelers, 514 U.S. at 655, 115 S.Ct. 1671). However, the Supreme Court explained that:
[i]n order to evaluate whether the normal presumption against preemption has been overcome in a particular case, we [have] concluded that we “must go beyond the unhelpful text [in § 1144(a)] and the frustrating difficulty of defining its key term[s], and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.”
De Buono, 520 U.S. at 813-14, 117 S.Ct. 1747 (citing Travelers, 514 U.S. at 656, 115 S.Ct. 1671). The Supreme Court reiterated this view in Dillingham, noting that the statute at issue there, a wage law, was no different from myriad state laws in areas traditionally subject to local regulation, and when Congress enacted the ERISA preemption clause, it could not possibly have intended to eliminate all of these laws.[3] Dillingham, 519 U.S. at 334, 117 S.Ct. 832.
In my view, nothing in ERISA suggests that Congress intended to preempt the agreement of the parties here. Rather, when Congress enacted ERISA, it was concerned about the enormous number of benefit plans which were receiving preferential tax treatment, but were not protecting long term employees from losing anticipated retirement benefits because the plans lacked vesting provisions. See 29 U.S.C. § 1001(a). It was also concerned *1152 about how many employee benefit plans contained inadequate minimum protective standards and, as a result, were unable to pay promised benefits or were forced to terminate the plans before the requisite funds had been accumulated. Id. Congress, therefore, created a statute which would standardize “disclosure and reporting [obligations] to participants and beneficiaries ... [with regard to] financial and other information”; establish “standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans”; create “vesting standards for employees with significant periods of service”; erect minimum funding standards for plans and require plan termination insurance; and “provid[e] for appropriate remedies, sanctions, and ready access to the federal courts.” 29 U.S.C. § 1001(b) & (c).
When one looks at ERISA’s preemption clause in light of Congress’ goals for the entire statute, it seems clear that Congress was simply ensuring that no state regulation would supersede the protections provided by the statute’s provisions. Therefore, consistent with these goals, the phrase “State laws” in § 1144(a) refers to the conflicting legislative acts of a state (and any court interpretation of those legislative acts). There is nothing in the goals and purposes of ERISA that extends to non-conflicting agreements to be bound by the decisional law of state courts in interpreting ambiguous terms in their contracts.
Indeed, no Supreme Court case has addressed ERISA preemption in light of private agreements concerning state law. Rather, all of the Supreme Court’s ERISA preemption cases address the question of whether state legislative enactments affect the regulation, operation, structure and policy concerns of ERISA, or whether state law causes of action conflict with the statute’s enforcement mechanisms. See Egelhoff v. Egelhoff, — U.S. -, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (holding that a Washington state law which automatically revoked designation of spouse as plan beneficiary upon divorce was preempted as applied to ERISA plans because it conflicted with ERISA’s requirement that a plan be administered according to the plan’s terms); UNUM, 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (holding, inter alia, that California agency law establishing that an employer was an agent of the insurer providing its insurance policies was preempted by ERISA); Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (holding that ERISA preempted a Louisiana state law regulating community property when the insured sought to use a testamentary transfer to convey his interest in an ERISA plan); De Buono, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (holding that ERISA did not preempt a New York state tax on the gross receipts of health care facilities operated by an ERISA fund); Travelers, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (holding that ERISA did not preempt a New York statute requiring hospitals to collect surcharges from patients covered by a commercial insurer but not from a patient insured by a Blue Cross Blue Shield plan); John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (recognizing that ERISA’s fiduciary duties provisions do not always preempt state law obligations for fiduciaries managing benefit plans); Dist. of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (holding that the District of Columbia Worker’s Compensation Equity Amendment Act explicitly referred to ERISA and was therefore preempted); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 *1153 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that a Texas state law claim for wrongful discharge was preempted when it was based on the allegation that the termination was motivated by the employer’s desire to avoid payment of ERISA benefits); FMC Corp. v. Holliday, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) (holding that ERISA preempted application of the Pennsylvania Motor Vehicle Financial Responsibility Law to an ERISA governed health care plan); Massachusetts v. Morash, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) (holding that Massachusetts criminal statute requiring employers to pay employees for unused vacation time was not preempted by ERISA because it did not concern an ERISA benefit plan); Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (holding that a Georgia state law specifically protecting ERISA benefits from garnishment was preempted by ERISA and that ERISA benefits could be garnished under generally applicable Georgia law); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1,107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (holding that Maine law requiring one time severance payment for employees of closed plants was not preempted by’ ERISA); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that plaintiffs Michigan tort and contract claims for wrongful denial of ERISA benefits were preempted by ERISA); Pilot Life, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that Mississippi state law claims for wrongful denial of ERISA plan benefits were preempted by ERISA); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (holding that Massachusetts insurance law requiring certain benefits was not preempted by ERISA because it fell within ERISA’s “savings clause”); Shaw, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (holding that ERISA preempted New York Human Rights Law to the extent that it imposed conflicting insurance obligations than required under ERISA but that New York Disability Law was not preempted if not applied to ERISA plans); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (holding that New Jersey statute barring certain calculations for pension benefits was preempted under ERISA).
The only circuit court which has addressed a case similar to this one is the Eighth Circuit in Prudential Insurance Company of America v. Doe, 140 F.3d 785, 790-91 (8th Cir.1998), which relied on the earlier case of Brewer v. Lincoln National Life Insurance Company, 921 F.2d 150, 153-54 (8th Cir.1990).[4] In Prudential, the *1154 Eighth Circuit declined to enforce a choice of law agreement providing for Illinois law to govern the interpretation of the term “mental illness” in the ERISA policy. The Prudential Court, without explanation, simply stated, “[a]lthough choice of law provisions may be relevant in a diversity action, we are required to apply federal common law when deciding federal questions. In light of the broad preemptive scope of ERISA, the question of coverage ... is clearly one of federal law.” Id. at 791. In the earlier Brewer case, the Eighth Circuit declined to apply a choice of law agreement in the same context stating, again without analysis, that ERISA’s “preemption clause applies broadly to all state laws that have any direct or indirect relation to pension plans, even if they were not specifically designed for that purpose,” and are only saved from preemption if they fall within ERISA’s “savings clause.” 921 F.2d at 153-54.
Neither Prudential nor Brewer offer any compelling rationale for why ERISA’s preemption clause should be construed to wholly bar the general practice of agreements between insurers and insureds as to how their insurance policy’s terms will be construed. Thus, I concur with Judge Poliak’s assessment that ERISA’s preemption clause does not bar the enforcement of a choice of law agreement, as long as the law applied does not conflict with ERISA’s statutory language or policy goals.

. I recognize that an ERISA insurer's freedom to contract may be partially constrained by mandatory state laws for, when Congress passed ERISA, it recognized that states may create laws designed specifically to regulate the insurance industry, and an ERISA insurer is required to adhere to these laws as long as they fall within ERISA’s "savings clause.” See UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 363, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (discussing 29 U.S.C. § 1144(b)(2)(A)). To fall under the protection of the "savings clause” the state law must: (1) from "a common-sense view of the matter ... regulate[] insurance”; (2) "ha[ve] the effect of transferring or spreading a policyholder's risk”; (3) concern a practice "integral ... [to] the policy relationship between the insurer and the insured”; and (4) concern a "practice ... limited to entities within the insurance industry.” Id. at 367, 119 S.Ct. 1380. However, the limits the "savings clause” imposes on an ERISA insurer’s freedom to contract have no bearing on whether an ERISA insurer may voluntarily choose to adopt other state law standards to govern the interpretation of an ERISA policy's terms.

. Indeed, there is nothing in ERISA generally that addresses how contractual terms such as "accident” should be defined or interpreted.

. Specifically, the Dillingham Court explained, "we could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort. We thus conclude that California's prevailing wage laws and apprenticeship standards do not have a 'connection with,’ and therefore do not 'relate to,’ ERISA plans.” Dillingham, 519 U.S. at 334, 117 S.Ct. 832.

. I do not find ERISA cases concerning disputes about statutes of limitations analogous, because these cases are decided under the federal common law rule permitting the courts to select a statute of limitations from the law of the forum when a federal cause of action does not have one. See Wilson v. Garcia, 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (explaining that when Congress fails to provide a statute of limitations for a federal cause of action it is Congress’ intent for courts to apply the statute of limitation from the most analogous cause of action under state law). Three courts have relied on this rule as an explanation for why they would not select a statute of limitations for a party’s ERISA claim based on the law indicated by the choice of law agreement in the parties’ ERISA contract. See, e.g., Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc., 799 F.2d 1098, 1104-05 (6th Cir.1986) (explaining that “when Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.”). See also Gluck v. Unisys, 960 F.2d 1168, 1180 (3d Cir.1992) (applying rule and explaining that "choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express.”); Robbins v. Iowa Builders, Co., 828 *1154 F.2d 1348, 1352-53 (8th Cir.1987) (following the same rule and commenting that choice of law provisions are irrelevant to an ERISA action because these provisions are only relevant to diversity cases). However, at least one court has concluded that the federal rule for selecting statutes of limitations can be suspended by the parties’ choice of law agreement. See Wang v. Kagan, 990 F.2d 1126, 1129 (9th Cir.1993) (applying choice of law agreement in ERISA benefit plan to decide statute of limitations question because the provision was "not unreasonable” or "fundamentally unfair”). Because the federal common law rule for identifying statutes of limitations is independent of our concerns regarding whether one can elect to contract around the substantive definitions for policy terms under the federal common law of ERISA, I do not rely on these cases for my analysis.