RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

BLUECROSS BLUESHIELD OF TENNESSEE, INC.,

*Plaintiff-Appellant*,

*v.*

CHRISTOPHER R. NICOLOPOULOS,

*Defendant*,

DAVID J. BETTENCOURT, in His Official Capacity as Commissioner of the New Hampshire Insurance Department,

*Defendant-Appellee*.

No. 24-5307

───────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Chattanooga.
No. 1:21-cv-00271—J. Ronnie Greer, District Judge.

Argued: December 11, 2024

Decided and Filed: May 8, 2025

Before: KETHLEDGE, LARSEN, and MATHIS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Karin A. DeMasi, CRAVATH, SWAINE & MOORE LLP, New York, New York, for Appellant. Samuel R.V. Garland, NEW HAMPSHIRE DEPARTMENT OF JUSTICE, Concord, New Hampshire, for Appellee. **ON BRIEF:** Karin A. DeMasi, CRAVATH, SWAINE & MOORE LLP, New York, New York, Anthony F. Shelley, Dawn E. Murphy-Johnson, MILLER & CHEVALIER CHARTERED, Washington, D.C., for Appellant. Anthony J. Galdieri, Nathan W. Kenison-Marvin, NEW HAMPSHIRE DEPARTMENT OF JUSTICE, Concord, New Hampshire, for Appellee.

––––––––––––––––––

**OPINION**

––––––––––––––––––

LARSEN, Circuit Judge.   BlueCross BlueShield of Tennessee (BlueCross) is both the insurer and fiduciary for an ERISA-governed group health insurance plan.  A plan member in New Hampshire sought coverage for medical treatments she received.  Because the plan did not cover such treatments, BlueCross denied the claims.  The Commissioner of the New Hampshire Insurance Department brought an enforcement action against BlueCross, alleging that BlueCross did not cover medical treatments required under New Hampshire law.  BlueCross sought to enjoin the state regulatory action on the grounds that it threatened BlueCross's fiduciary duties under ERISA.   The district court denied relief and granted summary judgment to the Commissioner.  BlueCross appeals.  For the following reasons, we AFFIRM.

I.

*Factual Background.*   BlueCross is a nonprofit Tennessee corporation licensed to issue health insurance policies in Tennessee.   PhyNet Dermatology, LLC (PhyNet), is a Tennessee-based company with employees in various states, including New Hampshire.  In 2020 and 2021, BlueCross sold and issued a group health insurance policy to PhyNet, forming an employee welfare benefit plan (Plan).  The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*., governs the Plan.  BlueCross is not licensed to do business or issue health insurance policies in New Hampshire.[1]

BlueCross administers the Plan.  As an administrator, BlueCross determines whether the Plan covers claims that Plan participants submit.  In this role, BlueCross acts as a Plan fiduciary. The Plan specifies that Tennessee law applies where federal law does not.

––––––––––––––––––

[1]To cover claims by New Hampshire residents BlueCross participates in the "BlueCard Program," whereby another designated insurance network covers BlueCross policy members' medical claims and BlueCross reimburses that network.  BlueCross's sister network in New Hampshire is Anthem Health Plans of NH, Inc.  So, a policy member in New Hampshire obtains medical services from a provider at Anthem's rates.  The provider bills Anthem, who then sends the claim to BlueCross.  BlueCross consults the Plan's terms and informs Anthem whether the policy covers the claim and in what amount.  Anthem pays the provider for the expenses covered under the policy, and BlueCross reimburses Anthem.

B.C., a PhyNet employee and Plan member in New Hampshire, submitted claims for fertility treatments that she received in 2020 and 2021. Because the Plan deliberately excludes fertility treatments from coverage, BlueCross, acting as a fiduciary, denied B.C.'s claims. This would have been all well and good under Tennessee law, which does not mandate health insurance coverage for fertility treatments. But New Hampshire law does. So, after learning about BlueCross's denial of B.C.'s claims, the Commissioner of the New Hampshire Insurance Department reached out to BlueCross.[2] The Commissioner informed BlueCross that, as an issuer of a group health policy to an employer with employees in New Hampshire, its coverage must follow New Hampshire's insurance mandates. BlueCross nevertheless refused to cover B.C.'s fertility treatments.

Following BlueCross's refusal, the Commissioner issued an Order to Show Cause and Notice of Hearing to BlueCross. The Show-Cause Order noted that New Hampshire law requires insurance plans to "provide coverage for medically necessary fertility treatment," but that BlueCross had nonetheless denied B.C.'s claims for such treatment. R. 20-1, Pls.' Ex. 1, PageID 475. It required BlueCross to attend an evidentiary hearing to determine whether BlueCross violated its laws. And it requested that BlueCross be ordered "to pay a penalty no less than $52,500" and "to cease and desist from offering health insurance in [New Hampshire]." *Id.* at 476. In response, BlueCross filed suit in federal court, relying on ERISA to ward off the New Hampshire administrative proceeding.

*ERISA*. ERISA is a "uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To foster uniformity, ERISA includes "expansive pre-emption provisions," thus making the regulation of employee benefit plans an "exclusively . . . federal concern." *Id.* (citation omitted).

As part of its regulatory scheme, ERISA sets out the obligations and powers of ERISA-plan fiduciaries. Anyone who "has any discretionary authority or discretionary responsibility in the administration of" an employee benefit plan is generally a fiduciary under

---

[2]Christopher Nicolopoulos was the commissioner at the time, but he ceased holding office on July 4, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), his successor, David J. Bettencourt, was automatically substituted as a defendant.

ERISA. ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Section 404(a)(1)(D) of ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1), (D). If any act or practice violates a plan's terms, ERISA § 502(a)(3) enables a fiduciary to seek injunctive relief from that act or practice. 29 U.S.C. § 1132(a)(3).

Despite ERISA's broad regulatory power and vast preemption of state laws, ERISA "contains almost no federal regulation of the *terms* of benefit plans." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985) (emphasis added). Instead, it leaves the regulation of plan terms to the states through its "saving clause": ERISA § 514(b)(2)(A). *Id.* at 733. The saving clause provides that, generally, ERISA does not "exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). So, a state may enforce its insurance laws, including "mandated-benefit laws," against an insurer, even if ERISA governs the plan. *Metro. Life*, 471 U.S. at 746; *see FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) ("[An] ERISA plan is . . . bound by state insurance regulations insofar as they apply to the plan's insurer.").

*Procedural Background.* BlueCross filed a complaint in federal court for preliminary injunctive relief under § 502(a)(3) of ERISA, which protects ERISA-plan fiduciaries. The parties agreed to stay the state administrative proceeding pending the federal litigation's outcome, so BlueCross withdrew its request for preliminary relief. In its place, BlueCross filed a four-count amended complaint. In its fiduciary capacity, BlueCross broadly sought injunctive and declaratory relief from the Commissioner's enforcement of New Hampshire's fertility-treatment mandate with respect to the Plan.[3] The Commissioner filed a motion to dismiss for lack of jurisdiction, which the district court denied.

BlueCross subsequently filed a motion for partial summary judgment. The district court denied the motion. In doing so, the court announced its intent to grant summary judgment to the Commissioner pursuant to Federal Rule of Civil Procedure 56(f)(1). As the court saw it, the

---

[3]BlueCross also sought injunctive and declaratory relief barring the Commissioner from enforcing New Hampshire insurance laws against similar ERISA-covered, BlueCross-administered group health insurance plans with Tennessee choice-of-law provisions. BlueCross does not appeal the district court's order on that count.

Commissioner brought the state administrative enforcement action against BlueCross in its capacity as an insurer.  ERISA's saving clause permits such actions.  So, BlueCross could not successfully use ERISA § 502(a)(3) to shield itself from the facially valid enforcement action brought against it as an insurer.

BlueCross contested the district court's determination, but the court nevertheless granted summary judgment with respect to all but one issue—whether the Commissioner could enforce New Hampshire's unfair-insurance-practices law against BlueCross.  The parties consensually mooted any remaining claims arising from that issue, and the district court entered final judgment.  BlueCross appeals.

## II.

The crux of the present dispute is whether the Commissioner brought the Show-Cause Order against BlueCross in BlueCross's capacity as an ERISA fiduciary or as an insurer. BlueCross argues the former; the Commissioner argues the latter.

## A.

At the outset, the Commissioner argues that BlueCross forfeited its central argument by failing to raise it below.  *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).  We disagree.

BlueCross has consistently framed the Show-Cause Order as having been brought against BlueCross in its fiduciary capacity, and therefore not in its capacity as an insurer.  Throughout its amended complaint, BlueCross stated that it was seeking relief "in its fiduciary capacity" from the Show-Cause Order that it saw as threatening BlueCross's fiduciary obligations.  R. 20, Amended Compl., PageID 451–53, 463, 465–66, 468.  Further, in moving for partial summary judgment, BlueCross asserted that the New Hampshire proceeding "is, in effect, a proxy effort to reverse and remedy B.C.'s benefits denial."  R. 38, Br. for Partial Summ. J., PageID 596.  And when the district court rejected this characterization of the action, BlueCross disagreed, claiming that the "sole issue[]" in the Show-Cause Order is whether BlueCross "wrongfully refused [coverage] for [B.C.'s] fertility treatments under New Hampshire law."  R. 84, Pls.' Mem. in

Resp. to Dct. Ct. Op. & Order, PageID 1466 n.9.  Because BlueCross has consistently framed the Show-Cause Order as one targeting BlueCross for actions it took as a fiduciary, BlueCross did not forfeit the argument.

B.

We turn to the merits.  BlueCross contends that the district court was wrong to conclude that the Commissioner issued the Show-Cause Order against BlueCross in its capacity as an insurer, rather than as a fiduciary.  The capacity question matters because ERISA's saving clause permits states to enforce their insurance laws against insurers.  ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).  So if BlueCross was ordered to attend the New Hampshire hearing in its capacity as an insurer, ERISA poses no obstacle to the state proceeding.  As the party seeking injunctive relief, BlueCross has the burden to show that the Commissioner was not proceeding against it as an insurer, but instead as a fiduciary.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

"We review a grant of summary judgment de novo, and we draw all reasonable inferences for the nonmoving party."  *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1056 (6th Cir. 2024).  "To survive summary judgment, the nonmoving party must present significant probative evidence putting the material facts in doubt."  *Id.* at 1057 (citation and quotation marks omitted).  If "no genuine dispute as to any material fact" exists, the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A look at ERISA's provisions helps us discern the nature of the New Hampshire proceeding against BlueCross.  The Commissioner is not a participant or beneficiary of the Plan, so he cannot challenge BlueCross's fiduciary-capacity determination of B.C.'s benefits.  *See* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  The Commissioner can, however, enforce New Hampshire's insurance laws against insurers.  *See* ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A); N.H. Rev. Stat. Ann. § 400-A:3 (2025).  So, absent some irregularity, the Commissioner must be bringing the administrative action against BlueCross to enforce New Hampshire's insurance laws.  *Cf. Hartman v. Moore*, 547 U.S. 250, 263 (2006) (noting the

"longstanding presumption of regularity accorded to prosecutorial decisionmaking"); *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019) (same).

The Show-Cause Order also reveals that the Commissioner is targeting BlueCross for actions it took as an insurer. The order's "Statement of Issues" concerns whether BlueCross violated two New Hampshire insurance laws. The first permits the State to sanction the knowing violation of its insurance laws. N.H. Rev. Stat. Ann. § 400-A:15(III) (2025). The second requires every "health carrier that issues or renews any group policy [or] plan" that provides "benefits for medical or hospital expenses" to "provide to certificate holders of such insurance coverage for medically necessary fertility treatment." *Id.* § 417-G:2(II). These laws patently concern insurance regulation and could apply to BlueCross only in its capacity as an insurer.

The "Penalty Requested" further reflects this. The Commissioner seeks: (1) a monetary penalty of at least $52,500 and (2) an order directing BlueCross to cease and desist from providing health insurance in New Hampshire. The cease-and-desist penalty manifestly targets BlueCross as an insurer, not a fiduciary. The monetary penalty does too, as § 400-A:15(III) authorizes a monetary penalty for each violation of any insurance "statute, rule, [or] regulation."**[4]**

To be sure, the Order's "Statement of Facts" and "Statement of Issues" focus heavily on BlueCross's denial of B.C.'s claims. And the Commissioner brought the enforcement action following discussions over BlueCross's denial of B.C.'s claims and the Commissioner's failed attempt to reverse it. But, as the district court remarked, "how else should [the Commissioner] reasonably [have] be[en] expected to learn that [BlueCross] was potentially in violation of [New Hampshire's insurance] laws?" R. 88, Dct. Ct. Op. & Order, PageID 1503 n.4. It makes sense that the Order references the facts of B.C.'s case and that the Commissioner intends to use witnesses and exhibits related to her case at the administrative proceeding—if BlueCross is

---

**[4]**In its order providing notice of its intent to grant summary judgment, the district court observed that "the record is devoid of any" "indication that the $52,000 [sic] monetary fine requested in the Show Cause Order has any relation to the sum of B.C.'s denied claims." R. 83, Dct. Ct. Op. & Order, PageID 1443. The court noted, however, that, if there were such a relationship, it "fully expect[ed] that [BlueCross] would have pointed that out." *Id.* BlueCross's brief in response to the order stayed silent on the matter. But at oral argument in this court, counsel for BlueCross suggested that the requested penalty is, in fact, the sum of BlueCross's denials of B.C.'s claims. An argument raised for the first time at oral argument, however, is not preserved for appeal. *Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc).

subject to New Hampshire's insurance laws, the denial of B.C.'s claims is evidence that BlueCross has been skirting them.

Supreme Court caselaw confirms that ERISA is of no help to BlueCross here. The Supreme Court concluded in *UNUM Life Insurance Co. of America v. Ward*, 526 U.S. 358 (1999), that insurers who also function as ERISA-plan fiduciaries cannot use their fiduciary duties to evade enforcement of state insurance laws. In *Ward*, as here, the insurer contended that ERISA preempted a "saved" state insurance regulation because the regulation "conflict[ed] with ERISA's requirement that plan fiduciaries act 'in accordance with the documents and instruments governing the plan.'" *Id.* at 375 (quoting 29 U.S.C. § 1104(a)(1)(D)). The Court swiftly discarded this argument. Finding ERISA preemption in such circumstances, it explained, would leave states "powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents." *Id.* at 376. *Ward* thus establishes that fiduciary duties created by the terms of an ERISA-governed employee benefit plan are not an escape hatch from valid state insurance regulations. *Cf. Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 912 (7th Cir. 2013) ("[W]hen an employee-benefits plan includes an insurance policy, contract terms mandated by state insurance law become plan terms.").

In short, the Commissioner brought the enforcement action against BlueCross in its capacity as an insurer. He did so to enforce New Hampshire's insurance laws. And the saving clause saves state insurance laws from ERISA preemption. So ERISA does not shield BlueCross from New Hampshire's regulatory action.

BlueCross raises a handful of challenges to this conclusion. None is persuasive. First, BlueCross disputes the relevancy of *Ward* because it "says nothing about *which* states' 'saved' benefits mandates apply to an ERISA fiduciary," here, New Hampshire's or Tennessee's. Appellant Br. at 29. BlueCross insists that is the real question this case presents. That framing, however, relies on adopting BlueCross's factual position—that the Commissioner seeks to regulate BlueCross as a fiduciary. As shown, that simply is not the case.

BlueCross also invokes *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), and *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376 (6th Cir. 1993), to argue that ERISA § 502(a)(3) provides a viable remedy here. But those cases merely recognize that ERISA fiduciaries may seek declaratory and injunctive relief under § 502(a)(3) "when their rights and duties under ERISA are at issue." *Franchise Tax Bd.*, 463 U.S. at 19–20; *see Thiokol*, 987 F.2d at 380. No one disputes this statement of the law. Indeed, the district court allowed BlueCross to *seek* relief under § 502(a)(3) here: when denying the Commissioner's motion to dismiss, the district court explained that "when accepting the facts in the Amended Complaint as true, Plaintiff is a fiduciary and can bring an action under ERISA." R. 45, Dct. Ct. Op. & Order, PageID 981. So the court had jurisdiction over the suit. But, at the summary judgment stage, the district court correctly determined that the Show-Cause Order is directed to BlueCross as an insurer. And the Supreme Court's decision in *Ward* makes clear that § 502(a)(3) has no force against state enforcement actions brought against insurers. 526 U.S. at 375–76. So although BlueCross could seek relief under ERISA, it is "not entitled to [such] relief." R. 88, Dct. Ct. Op. & Order, PageID 1497. In any event, neither *Franchise Tax Board* nor *Thiokol* dealt with a state attempting to enforce its ERISA-saved *insurance* laws against an insurer; rather, both cases involved a state attempting to exert its *taxing* power over an ERISA-governed plan. *Franchise Tax Bd.*, 463 U.S. at 4–7; *Thiokol*, 987 F.3d at 377–78. *Franchise Tax Board* and *Thiokol* thus do not carry the day for BlueCross.

BlueCross further warns of the consequences of permitting states to enforce their benefit-mandate laws against insurers, who also are ERISA-plan fiduciaries, whenever the states disapprove of benefits denials. BlueCross fears that insurers/fiduciaries will have to "master the relevant laws of 50 States," thus undermining ERISA's goal of "minimizing the administrative and financial burdens on plan administrators." Appellant Br. at 36 (citation and quotation marks omitted). Like the Supreme Court, we "recognize that applying the States' varying insurance regulations creates disuniformities" but that seems to be "the inevitable result of the congressional decision to 'save' local insurance regulation." *Ward*, 526 U.S. at 376 n.6 (quoting *Metro. Life*, 471 U.S. at 747).

Finally, BlueCross asserts that "there are all sorts of reasons why New Hampshire cannot regulate [BlueCross] in its capacity as an insurer," including due process limitations. Reply Br. at 13. But BlueCross did not plead this theory of relief in the district court, and its opening brief to this court acknowledges that these issues were "not before [the district court] for decision in this case." Appellant Br. at 30. Like the district court below, we "take[] no position on whether [BlueCross] has actually engaged in the practice of insurance in New Hampshire or whether [BlueCross's] contacts with New Hampshire are enough to subject it to New Hampshire's jurisdiction." R. 83, Dct. Ct. Op. & Order, PageID 1445. We assume that BlueCross may raise these issues in the New Hampshire administrative proceeding.

\* \* \*

Although ERISA broadly preempts state laws, it leaves intact the states' authority to enforce their insurance regulations. The Commissioner attempts to exercise that authority here against BlueCross in its capacity as an insurer. Because ERISA does not stand in his way, we AFFIRM.